IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DEESHAWN DISMUKE | § |
| | § |
| Petitioner, | § |
| | § |
| VS. | § |
| | § NO. 3-08-CV-0303-P |
| NATHANIEL QUARTERMAN, Director | § |
| Texas Department of Criminal Justice, | § |
| Correctional Institutions Division | § |
| | § |
| Respondent. | § |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Petitioner Deeshawn Dismuke, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of intentionally and knowingly causing serious bodily injury to the 22-month old child of his girlfriend, Trina Smith. Punishment, enhanced by a prior felony conviction, was assessed at 40 years confinement and a $5,000 fine. His conviction and sentence were affirmed on direct appeal. *Dismuke v. State*, No. 10-05-00247-CR, 2006 WL 181379 (Tex. App.--Waco, Jan. 25, 2006). When petitioner did not receive notice of the court of appeals decision in time to file a petition for discretionary review, he sought state post-conviction relief in the form of an out-of-time appeal. The Texas Court of Criminal Appeals granted habeas relief and allowed petitioner to file an out-of-time PDR. *Ex parte Dismuke*, No. AP-75,579, 2006 WL 3734443 (Tex. Crim. App. Dec. 20, 2006). Thereafter, petitioner filed a *pro se* PDR, which was refused. *Dismuke v. State*, No. 33-07 (Tex. Crim. App. Apr. 25, 2007). Petitioner then filed a second application for

state post-conviction relief. That application was denied without written order. *Ex parte Dismuke*, WR-66,463-02 (Tex. Crim. App. Oct. 31, 2007). Petitioner now seeks federal habeas relief.

II.

In three grounds for relief, petitioner contends that: (1) the evidence was insufficient to support his conviction; (2) he was denied the right to compulsory process; and (3) he received ineffective assistance of counsel.[1]

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct.

---

[1] As part of his answer, respondent argues that petitioner's claims are barred by the AEDPA statute of limitations. (*See* Resp. Ans. at 9-13). The court need not decide this procedural issue as petitioner is not entitled to federal habeas relief in any event. *See White v. Quarterman*, No. 3-06-CV-0705-P, 2006 WL 2914608 at *2 n.1 (N.D. Tex. Oct. 11, 2006) (declining to address affirmative defense of limitations where petitioner was not entitled to relief on the merits).

at 1523. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.

Petitioner first contends that the evidence was insufficient to support his conviction for injury to a child. Although petitioner acknowledges that the testimony of Trina Smith, who was charged as an accomplice, was sufficient to establish his guilt, petitioner complains that Smith's testimony was not corroborated by other evidence as required by article 38.14 of the Texas Code of Criminal Procedure.[2]

This claim fails for two reasons. First, "the Constitution imposes no requirement that the testimony of an accomplice-witness be corroborated by independent evidence." *Mayo v. Quarterman*, No. 3-05-CV-0565-D, 2006 WL 3755221 at *4 (N.D. Tex. Dec. 21, 2006), *appeal dism'd*, No. 07-10092 (5th Cir. Feb. 13, 2007), *quoting Brown v. Collins*, 937 F.2d 175, 182 n.12 (5th Cir. 1991). Even if the prosecution failed to satisfy the requirements of the Texas accomplice-witness rule, that violation of state law would not entitle petitioner to federal habeas relief. *Brown*, 937 F.2d at 182 n.12, *citing Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78

---

[2] Article 38.14 provides:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

(1982) (only federal constitutional claims are cognizable in section 2254 proceeding). Second, petitioner gave a statement to the police wherein he admitted causing the child's injuries. According to petitioner:

> On the weekend of my birthday, 12/18/03, I was playing with [the child] at our trailer in Waxahachie. I was throwing him up in the air-- I threw him about 3 feet up into the air. I did this 4 or 5 times. About 4 of the times that I caught him, he landed on his stomach in my hands--I never dropped him but I feel I was probably playing with him a little too rough. The last time I threw him in the air I caught him on my chest and hugged him. Then I sat him on the ground--the carpet, in front of the T.V. A few minutes later he messed on himself and I could smell it. I told her to change his diaper. [Later] I was bouncing him Trina was there in the room and said, "that's enough." I guess she had gotten tired of me playing with him like that. I feel this is what caused his injury and I told Detective Woodruff that I take full responsibility.

\* \* \* \*

> A day or two before I was throwing him up in the air I was playing another game with [the child]: I tied him to a white plastic stool with a belt. I laid him on his stomach and tied him down with the belt to the stool. Then I picked him and the stool up and I flipped him over one time. Then I set him down and bounced him up and down while he was belted to the stool. We did this for awhile and he was in that position for not more than 10 minutes. Trina was there in the living room during all of this. She said "Look at [the child], Shawn. Let him go." I took the belt off of him and let him go. The belt is about an inch wide. Out of the incidents I have described to Det. Woodruff today, I feel like my throwing him in the air--the first incident--is likely to have caused the injuries that he is in the hospital for now. I am sorry that I did not tell police about this sooner. Yesterday I told Detectives Wiser and Woodruff that I did not do anything to [the child]. I am going to have to change that story and take responsibility for his injury that I caused.

(*See* SF-V at 155, St. Exh. 8). On direct appeal, the state court held that petitioner's statement, which was admitted into evidence without objection, "is sufficient corroboration of his connection to the crime as required by Article 38.14." *Dismuke*, 2006 WL 181379 at *1. Petitioner has failed to show

that the appeals court decision is contrary to clearly established federal law or unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1). Despite his protestations of innocence,[3] petitioner is not entitled to federal habeas relief on this ground.

C.

Petitioner further contends that he was denied the right to compulsory process because the state made no attempt to locate two potential defense witnesses, Brent Carter and Claudia Smith, and the trial court refused to grant a continuance for that purpose. The court initially observes that the state made *four attempts* to serve Carter and Smith with trial subpoenas. When petitioner raised this claim on state collateral review, the trial court found:

> The Court's file reflects that four attempts were made to deliver the subpoenas to Carter and Smith in April 2005, prior to trial, but that the subpoenas were returned unserved, with the notation, "unable to make contact before court date."

*Ex parte Dismuke*, No. 66,463-01, Tr. at 1633, ¶ 14. That finding, which was implicitly adopted by the Texas Court of Criminal Appeals when it rejected petitioner's compulsory process claim, is presumed correct in a subsequent federal habeas proceeding. *See Craker v. Procunier*, 756 F.2d 1212, 1213-14 (5th Cir. 1985) (trial court's findings of fact entitled to presumption of correctness unless rejected by Texas Court of Criminal Appeals).

Moreover, petitioner has not proffered the testimony of these missing witnesses. In order to establish a violation of his Sixth Amendment right to compulsory process, petitioner must show more than the mere absence of favorable witnesses or evidence. Rather, "a petitioner 'must at least

---

[3] To the extent petitioner intends to assert a separate claim based on actual innocence, that claim also fails. *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1250 (2001), *quoting Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993) ("Claims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

make some plausible showing of how the absent witness's testimony would have been both material and favorable to his defense.'" *Janecka v. Cockrell*, 301 F.3d 316, 326 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1264 (2003), *quoting United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). Other than his conclusory assertion that Carter and Smith would have supported his "version of the facts," (*see* Pet. Mem. Br. at 11), petitioner makes no attempt to show that the missing testimony would have been both favorable and material. As a result, petitioner cannot establish a constitutional violation. *See Diez v. Director, TDCJ-CID*, No. 6-05-CV-116, 2005 WL 2736444 at *4 (E.D. Tex. Oct. 24, 2005), *citing Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986), *cert. denied*, 107 S.Ct. 873 (1987) (complaints of uncalled witnesses are not favored in federal habeas proceedings "because allegations of what a witness would have testified to are largely speculative").

D.

In his final ground for relief, petitioner alleges that he received ineffective assistance of counsel because his attorney: (1) allowed Trina Smith and him to be tried jointly; (2) did not move for a mistrial when a prosecution witness testified that he worked for a polygraph company; and (3) failed to present any expert testimony.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of

reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel).

2.

Petitioner and his girlfriend, Trina Smith, were tried together for causing injury to Smith's 22-month old son. Evidently, petitioner believes that this joint trial contributed to his conviction and that the outcome of the proceeding would have been different had he been tried separately. Under Texas law:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX. CODE CRIM. PROC. ANN. art. 36.09 (Vernon 2005). Here, Smith did not testify on behalf of the prosecution. Instead, she testified on her own behalf after the state rested its case-in-chief. (*See* SF-VI at 7). Nor did Smith have any prior convictions that were admitted into evidence at trial. Notwithstanding the lack of any statutory grounds upon which to file a motion for severance, petitioner argues that his attorney should have insisted on separate trials because Smith gave testimony that was prejudicial to him. However, Smith would have been able to testify against

petitioner even if the two were tried separately. If anything, the fact that petitioner and Smith were tried jointly made her self-serving testimony more suspect and allowed defense counsel to argue to the jury that Smith, not petitioner, was responsible for injuring the child. (*See* SF-VI at 222). Nothing in the record suggests that petitioner was prejudiced by this joint trial.

3.

Petitioner also criticizes his attorney for failing to request a mistrial after a prosecution witness, James Gallagher, introduced himself to the jury as an employee of Behavioral Measures Polygraph. (*See* SF-V at 47). Gallagher went on to testify that he interviewed petitioner following his arrest, at which time petitioner admitted that he injured the child. According to Gallagher:

> [Petitioner] told me that on December 19th, 2003, he tied [the child] to a plastic chair with a belt and swung him around in a circular motion.
>
> Mr. Dismuke stated that he was only playing with [the child]; but upon reflection realizes he was playing too hard and may have injured [the child] in the abdominal area.

(*Id.* at 50). Contrary to petitioner's assertion, defense counsel *did* ask for a mistrial after Gallagher "blurted out" that he worked for a polygraph company. (*See id.* at 47). The trial court denied the request, but instructed the jury to disregard Gallagher's statement. (*Id.*). Although petitioner believes that his attorney should have pursued his objection "more adamantly," (*see* Pet. Mem. Br. at 14), the court is not persuaded that a more vigorous objection would have been sustained.

In addition, Gallagher's testimony was largely cumulative of petitioner's statement admitting that he tied the child to a chair with a belt and "bounced him up and down" for about 10 minutes. (*See* SF-V at 155, St. Exh. 8). In light of that admission, it is difficult to envision how petitioner was prejudiced by Gallagher's testimony.

Finally, petitioner contends that his attorney was ineffective for failing to obtain an expert "to plainly and clearly establish how or what substantial force could have caused the injury to the child where none was found." (*See* Pet. Mem. Br. at 14). Once again, petitioner does not identify any potential experts or proffer the contents of their missing testimony. Without such evidence, the court cannot begin to analyze a claim of ineffective assistance of counsel. *See Earhart v. Johnson*, 132 F.3d 1062, 1067-68 (5th Cir.), *cert. denied*, 119 S.Ct. 344 (1998) (failure to identify expert whose testimony would have altered outcome of trial is fatal to claim for habeas relief).

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 16, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE